UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| WEB DESIGN AND CONSULTING SERVICES, INC. and **AD.COM INTERACTIVE MEDIA, INC.** | )<br>)<br>)<br>) |
| Plaintiffs | )<br>) |
| v. | )<br>)<br>) |
| MICHAEL ARAGON | )<br>) |
| Defendant | )<br>)<br>) |

## COMPLAINT

### Request for Injunctive Relief
### Demand for Jury Trial

NOW COMES plaintiff Web Design and Consulting Services, Inc. ("WDCS") and Ad.com Interactive Media, Inc. ("AdMedia"), collectively referred to herein as "the Company" by and through its undersigned attorneys, and complains against defendant Michael Aragon ("Aragon"), as follows:

### INTRODUCTION

1. The Company brings this action to prevent and remediate defendant Michael Aragon's flagrant and ongoing breaches of contract, misappropriation of trade secrets, and breaches of fiduciary duty. In August 2018, Aragon joined the Company as Vice President of Sales and executed a Confidentiality and Non-Solicitation Agreement with the Company which, *inter alia*, precluded Aragon from (a) using the Company's confidential information, including customer information, for any purpose other than for the benefit of the Company in the course of its business dealings; (b) using the Company's customer information to target or solicit Company customers on Aragon's behalf or on behalf of any third party; and

(c) soliciting the Company's employees on his behalf or on behalf of a third party. In March 2024, Aragon resigned from his position at the Company and immediately began his employment at Ad.net, a primary and direct competitor of the Company.

2. Aragon has intentionally and maliciously misappropriated Company propriety information, trade secrets, customer information, and equipment containing confidential and proprietary information; solicited the Company's customers; and induced Company employees to terminate their employment with the Company.

3. Aragon has used, and continues to use the Company confidential and proprietary information to enrich himself and his new employer.

4. Because of Aragon's actions, the Company has been, and continues to suffer substantial harm, including, but not limited to, lost prospective revenue in excess of $5,000,000.00.

5. Accordingly, Company seeks injunctive relief and monetary damages for Aragon's breaches of contract, misappropriation of its trade secrets under both the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA") and Maine's Uniform Trade Secrets Act ("UTSA"); 10 M.R.S.A. §§ 1541, et seq.; and breach of fiduciary duty.

## PARTIES

6. WDCS is, and was at all relevant times, a California corporation with a principal place of business Woodland Hills, California.

7. AdMedia is a subsidiary of WDCS and is, and was at all relevant times, a California corporation with a principal place of business in Woodland Hills, California.

8. Aragon is a natural person who, upon information and belief, resides in the Town of Westbrook, Maine.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action under 18 U.S.C. § 1836(c) (actions arising under the DTSA); 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1367, (supplemental jurisdiction); and the doctrines of ancillary and pendent jurisdiction

10. The Court may also exercise jurisdiction over this action under the principle of diversity jurisdiction pursuant to 28 U.S.C. § 1332 because this dispute is between citizens of different states and because the amount at controversy exceeds $75,000, as discussed herein.

11. The Court may exercise personal jurisdiction over Aragon because (a) he is a resident of Maine and (b) his actions and/or omissions as described herein and which caused WDCS' harm, occurred in Maine.

12. The United States District Court for the District of Maine is the appropriate venue for this action under 28 U.S.C. § 1391(b)(2) because (a) it is the judicial district in which Aragon resides and (b) it is a judicial district in which a substantial part of the events or omissions giving rise to WDCS' claims occurred.

## JURY TRIAL REQUESTED

13. The Company requests a trial by jury for all claims and issues for which a jury is permitted.

## FACTS

14. The Company incorporates and restates each of the allegations above as if set forth fully herein.

15. AdMedia is a digital marketing company and advertising network providing online advertising services to advertisers, publishers, and consumers.

16. The Company's business includes the development and use of confidential and proprietary trade secrets critical to its operations and market advantage in the advertising technology industry, including, but not limited to, customers lists with detailed purchasing history and product preferences; patented search technologies, including related algorithms, course code, and related documentation; financial data, including accounting data, pricing strategies and financial forecasts; and unique advertising and technology methodologies ("Company Trade Secrets").

17. At all relevant times, the Company took reasonable measures to maintain the secrecy of its confidential and proprietary information, including the Company Trade Secrets, including by, but not limited to, restricting access to said information through secure login credentials; use of data encryption; physical security at the Company's offices with controlled entry; secure serves and data storage facilities; requiring employees to execute confidentiality and non-disclosure agreements; regular monitoring of data access and usage; audits to ensure compliance with security protocols.

18. The Company employed Aragon as Vice President of Sales from around August 13, 2018, until approximately March 29, 2024, when Aragon resigned.

19. In his role as Vice President of Sales, Aragon owed a fiduciary duty to the Company.

20. At the time that Aragon joined the Company on August 13, 2018, and in exchange for the material and substantial consideration Aragon would receive in his role at the Company, Aragon executed a Confidentiality and Non-Solicitation Agreement.

21. Pursuant to the terms of the Confidentiality and Non-Solicitation Agreement, Aragon agreed to the following:

  a. Aragon promised to hold and treat the Company's databases, programs, models, materials unpublished information concerning research activities and plans, marketing plans, sales plans, pricing and price strategies, operation techniques, strategic plans, Customer Information (meaning all data pertaining or identifiable to the Company, including, without limitation (i) name; address; e-mail address; financial information; preferences; demographic data; marketing data; data about technology; and (ii) any information that reflects use of or interactions with a Company product or service) and unpublished financial information, including information concerning revenues, profits and profit margins ("Confidential Information") in the strictest confidence.

    b. Aragon promised to use and permit the Confidential Information solely to benefit the Company in the course of its business dealings.

    c. Aragon promised not to gather, store, or use any Customer Information in any manner and not to disclose, sell, share, rent or otherwise transfer any Customer Information to any third party, except as directed.

    d. Aragon promised to *promptly* return all Confidential Information and Customer Information upon his resignation and to promptly return or destroy all original materials in his possession which contained Confidential Information.

    e. Aragon promised that during his employment and for three years afterwards, he would not use Customer Information to target or solicit the Company's customers on his behalf or the behalf of a third party.

    f. Aragon promised that during his employment and for three years afterwards, he would not solicit Company employees or otherwise recruit or induce any Company employee to work for any third party or to otherwise terminate their employment with Company to work elsewhere.

22. In conjunction with his execution of the Confidentiality and Non-Solicitation Agreement, on August 13, 2018, Aragon signed a document titled "Schedule A" which included a list of persons, entities, and companies which were direct competitors to AdMedia and which was intended by Aragon and AdMedia to function as a list of employers for whom Aragon would be prohibited from working with after his employment at AdMedia ("Non-Compete Agreement").

23. Ad.net is explicitly listed as a company Aragon was prohibited from working with after his employment at AdMedia.

24. As Vice President of Sales, Aragon's primary role was to meet and establish relationships with potential AdMedia customers through a variety of contact channels, then convert those relationships into paying AdMedia customers.

25. The Company invested substantial resources to support Aragon in his role as Vice President of Sales, including, but not limited to, paying for Aragon to advertise and attend marketing events and trade shows where Aragon developed contracts and relationships with potential new customers.

26. The Company also invested substantial resources to support Aragon in his role as Vice President of Sales to develop relationships with existing customers.

27. In his role as Vice President of Sales, Aragon had access to the Company's confidential and proprietary information.

28. On or about March 29, 2024, Aragon met with the Company's Chief Executive Officer, Danny Bibi to provide his resignation notice.

29. Aragon's final day at AdMedia was March 29, 2024.

30. In or around April 2024, immediately after leaving the Company, Aragon began working at Ad.net as Vice President of Sales & Strategic Alliances.

31. Ad.net provides digital marketing and advertising services and is a direct competitor to the Company.

32. Prior to and after leaving the Company, Aragon violated, and continues to violate, numerous provisions of the Confidentiality and Non-Solicitation Agreement, including by, but not limited to, the following:

   a. Prior to leaving the Company, on or about March 29, 2024, Aragon improperly downloaded Company Confidential Information, including, but not limited to the Company's entire customer relationship management ("CRM") database, accounting information, historical pricing data relating to current and former Company customers, and prospective customer data and, upon information and belief, transferred that data to a system which he could then access after leaving Company.

   b. Despite the scheCompany's repeated requests that Aragon return all Company equipment, Aragon retained two company Apple desktop computers containing

6

        vast amounts of Confidential Information, including the Company's CRM database.

    c. Immediately after leaving the Company, Aragon used Confidential Information to solicit Company customers and, in many cases, secured contracts from those clients, on behalf of the Company's direct competitor, Ad.net.

    d. Prior to and immediately after leaving the Company, Aragon made efforts to solicit and recruit Company employees to terminate their employment and work for Ad.net.

33. Upon information and belief, Aragon is continuing to use the Company's confidential and proprietary information, and he is continuing to solicit its employees and customers, for the benefit of himself and his new employer.

34. As a result of Aragon's actions, the Company has suffered, and continues to suffer, substantial harm, including, but not limited to, hundreds of thousands of dollars in lost revenue, lost capital investments, lost corporate opportunities, and lost human resources.

## COUNT I

### BREACH OF CONTRACT: SOLICITATION OF COMPANY CUSTOMERS

35. The Company incorporates and restates each of the allegations above as if set forth fully herein.

36. The Confidentiality and Non-Solicitation Agreement constitutes a valid and enforceable agreement under Maine law.

37. The Company fully and properly performed its obligations under the terms of Confidentiality and Non-Solicitation Agreement.

38. Pursuant to terms of the Confidentiality and Non-Solicitation Agreement, Aragon promised not to solicit Company customers during his employment at the Company and for a period of three (3) years thereafter.

39. As described herein, Aragon materially breached the Confidentiality and Non-Solicitation Agreement by soliciting Company customers.

40. As a result of Aragon's breach, the Company has suffered and continues to suffer substantial harm.

41. Among all other available remedies, pursuant to Maine law and subsection 4 of the Confidentiality and Non-Solicitation Agreement, the Company is entitled to a preliminary order and permanent order/judgment, restraining and enjoining Aragon from actions constituting further breaches of the Confidentiality and Non-Solicitation Agreement.

## COUNT II

### BREACH OF CONTRACT: SOLICITATION OF COMPANY EMPLOYEES

42. The Company incorporates and restates each of the allegations above as if set forth fully herein.

43. The Confidentiality and Non-Solicitation Agreement constitutes a valid and enforceable agreement under Maine law.

44. The Company fully and properly performed its obligations under the terms of Confidentiality and Non-Solicitation Agreement.

45. Pursuant to terms of the Confidentiality and Non-Solicitation Agreement, Aragon promised not to solicit Company employees during his employment at the Company and for a period of three (3) years thereafter.

46. As described herein, Aragon materially breached the Confidentiality and Non-Solicitation Agreement by soliciting and/or recruiting Company employees to leave the Company to work for its competitor Ad.net.

47. As a result of Aragon's breach, the Company has suffered and continues to suffer substantial harm.

48. Among all other available remedies, pursuant to Maine law and subsection 4 of the Confidentiality and Non-Solicitation Agreement, the Company is entitled to a preliminary order and permanent order/judgment, restraining and enjoining Aragon from actions constituting further breaches of the Confidentiality and Non-Solicitation Agreement.

## COUNT III

**BREACH OF CONTRACT: MISUSE OF COMPANY CONFIDENTIAL INFORMATION**

49. The Company incorporates and restates each of the allegations above as if set forth fully herein.

50. The Confidentiality and Non-Solicitation Agreement constitutes a valid and enforceable agreement under Maine law.

51. The Company fully and properly performed its obligations under the terms of Confidentiality and Non-Solicitation Agreement.

52. Pursuant to terms of the Confidentiality and Non-Solicitation Agreement, Aragon promised not use Company Confidential Information, including Customer Information, for any purpose other than for the benefit of the Company and, in addition, expressly agreed not to disclose, distribute, share, or otherwise transfer any Customer Information to any third party.

53. Pursuant to terms of the Confidentiality and Non-Solicitation Agreement, Aragon agreed to promptly return or destroy all documents and/or materials containing Company Confidential Information and/or Customer Information.

54. As described herein, Aragon materially breached the Confidentiality and Non-Solicitation Agreement by disclosing, sharing, or otherwise transferring Confidential Information and/or Customer Information to himself and/or the Company's direct competitor Ad.net, and wrongfully retaining Company computers containing Confidential Information and/or Customer Information.

55. As a result of Aragon's breach, the Company has suffered and continues to suffer substantial harm.

56. Among all other available remedies, pursuant to Maine law and subsection 4 of the Confidentiality and Non-Solicitation Agreement, the Company is entitled to a preliminary order and permanent order/judgment, restraining and enjoining Aragon from actions

constituting further breaches of the Confidentiality and Non-Solicitation Agreement, along with a permanent injunction.

## COUNT IV

### BREACH OF CONTRACT: VIOLATION OF NONCOMPETE AGREEMENT

57. The Company incorporates and restates each of the allegations above as if set forth fully herein.

58. Pursuant to the terms of the Non-Compete Agreement, Aragon promised not to obtain employment with any persons or entities listed in said agreement.

59. As described herein, Aragon materially breached the Non-Compete Agreement by leaving AdMedia and immediately obtaining employment with Ad.net, a company listed as prohibited in the Non-Compete Agreement.

60. As a result of Aragon's breach, the Company has suffered and continues to suffer substantial harm.

Among all other available remedies, pursuant to Maine law and subsection 4 of the Confidentiality and Non-Solicitation Agreement, the Company is entitled to a preliminary order and permanent order/judgment, restraining and enjoining Aragon from actions constituting further breaches of the Confidentiality and Non-Solicitation Agreement.

## COUNT V

### VIOLATION OF THE MAINE UNIFORM TRADE SECRETS ACT, 10 M.R.S.A. §§ 1541, ET SEQ.

61. The Company incorporates and restates each of the allegations above as if set forth fully herein.

62. Aragon has willfully violated the provisions of Maine's Uniform Trade Secrets Act ("MUTSA"), 10 M.R.S.A. §§ 1541, *et seq.*, by misappropriating and utilizing trade secret information belonging to the Company for the benefit of himself and his employer, Ad.net.

63. The Company Trade Secrets Aragon including, but not limited to, the Company's Confidential Information (as defined above) and Customer Information (as defined above); customers lists with detailed purchasing history and product preferences; patented search technologies, including related algorithms, course code, and related documentation; financial data, including accounting data, pricing strategies and financial forecasts; and unique advertising and technology methodologies, are trade secrets which derive independent economic value, actual or potential, are not generally known to and not readily ascertainable by proper means by other persons who can obtain value from its disclosure or use and was subject, at all relevant times, to the Company's reasonable efforts to maintain its secrecy.

64. Aragon has misappropriated the Company Trade Secrets in one or more of the following ways:

   a. Acquiring the Company Trade Secrets through improper means, including, but not limited to, by breach or inducement of a breach of a duty to maintain secrecy;

   b. By disclosing and/or using the Company Trade Secrets without the Company's consent;

   c. By disclosing and/or using the Company Trade Secrets without the Company's consent for his own commercial benefit while knowing, or having reason to know, that the Company Trade Secrets were acquired through improper means;

   d. By disclosing and/or using Company Trade Secrets without the Company's consent for his own commercial benefit while knowing, or having reason to know, at the time of the disclosure and/or use, that the Company Trade Secrets were acquired under circumstances giving rise to a duty to maintain the secrecy and limit the use of those trade secrets; and

   e. By disclosing and/or using the Company Trade Secrets without the Company's consent for his own commercial benefit while knowing, or having reason to know, at the time of the disclosure and/or use, that the Company Trade Secrets

    were derived from or through a person who owed a duty to the Company to maintain the secrecy and limit the use of those trade secrets.

65. As a result of Aragon's misappropriation, the Company has suffered and continues to suffer substantial harm, and or Aragon has been unjustly enriched in an amount to be determined at trial.

66. As a result of Arago's misappropriation, the Company has suffered and will suffer irreparable harm if Aragon's misconduct is not enjoined.

67. Aragon's violation of the MUTSA was willful, malicious, and intended to facilitate unlawful competition against the Company to the benefit of himself and Ad.net.

68. Pursuant to 10 M.R.S.A. § 1544(2), the Company is entitled to an award of exemplary damages.

69. Pursuant to 10 M.R.S.A. § 1545, the Company is entitled to attorneys' fees.

70. Among all other available remedies, pursuant to 10 M.R.S.A. §1543 and subsection 4 of the Confidentiality and Non-Solicitation Agreement, the Company is entitled to a preliminary order and permanent order/judgment, restraining and enjoining Aragon from actions constituting further breaches of the Confidentiality and Non-Solicitation Agreement.

## COUNT VI

**VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C.A. § 1832, ET SEQ.**

71. The Company incorporates and restates each of the allegations above as if set forth fully herein.

72. Aragon has willfully violated the provisions of Defend Trade Secrets Act 18 U.S.C.A. § 1832, et seq, by misappropriating and utilizing trade secret information belonging to the Company for the benefit of himself and his employer, Ad.net.

73. The Company Trade Secrets Aragon including, but not limited to, the Company's Confidential Information (as defined above) and Customer Information (as defined above); customers lists with detailed purchasing history and product preferences; patented search

technologies, including related algorithms, course code, and related documentation; financial data, including accounting data, pricing strategies and financial forecasts; and unique advertising and technology methodologies, are trade secrets which derive independent economic value, actual or potential, are not generally known to and not readily ascertainable by proper means by other persons who can obtain value from its disclosure or use and was subject, at all relevant times, to the Company's reasonable efforts to maintain its secrecy.

74. Aragon has misappropriated the Company Trade Secrets in one or more of the following ways:

   a. Acquiring the Company Trade Secrets through improper means, including, but not limited to, by breach or inducement of a breach of a duty to maintain secrecy;

   b. By disclosing and/or using the Company Trade Secrets without the Company's consent;

   c. By disclosing and/or using the Company Trade Secrets without the Company's consent for his own commercial benefit while knowing, or having reason to know, that the Company Trade Secrets were acquired through improper means;

   d. By disclosing and/or using Company Trade Secrets without the Company's consent for his own commercial benefit while knowing, or having reason to know, at the time of the disclosure and/or use, that the Company Trade Secrets were acquired under circumstances giving rise to a duty to maintain the secrecy and limit the use of those trade secrets; and

   e. By disclosing and/or using the Company Trade Secrets without the Company's consent for his own commercial benefit while knowing, or having reason to know, at the time of the disclosure and/or use, that the Company Trade Secrets were derived from or through a person who owed a duty to the Company to maintain the secrecy and limit the use of those trade secrets.

75. As a result of Aragon's misappropriation, the Company has suffered and continues to suffer substantial harm, and or Aragon has been unjustly enriched in an amount to be determined at trial.

76. As a result of Arago's misappropriation, the Company has suffered and will suffer irreparable harm if Aragon's misconduct is not enjoined.

77. Aragon's violation of the MUTSA was willful, malicious, and intended to facilitate unlawful competition against the Company to the benefit of himself and Ad.net.

78. Pursuant to 18 U.S.C. § 1836(b)(3)(C), the Company is entitled to an award of exemplary damages.

79. Pursuant to 18 U.S.C. § 1836(b)(3)(D), the Company is entitled to attorneys' fees.

80. Among all other available remedies, pursuant to 18 U.S.C. § 1836(b)(3)(A) and subsection 4 of the Confidentiality and Non-Solicitation Agreement, the Company is entitled to a preliminary order and permanent order/judgment, restraining and enjoining Aragon from actions constituting further breaches of the Confidentiality and Non-Solicitation Agreement.

## COUNT VII

### BREACH OF FIDUCIARY DUTY/DUTY OF LOYALTY

81. The Company incorporates and restates each of the allegations above as if set forth fully herein.

82. Under Maine Law, corporate officers bear a fiduciary duty and duty of loyalty to discharge their duties in good faith, with the care that a person in a like position would reasonably exercise under similar circumstances, and in a manner the officer reasonable believes to be in the best interest of the corporation.

83. As described above, while an officer of the Company, Aragon willfully and intentionally violated his duty of care towards the Company by, *inter alia*, misappropriating Confidential Information and/or Customer Information for the purposes of using that information for the benefit of himself and the Company's competitor.

84. As a result of Aragon's breach, the Company has suffered and continues to suffer substantial harm.

85. Among all other available remedies, pursuant to Maine law and subsection 4 of the Confidentiality and Non-Solicitation Agreement, the Company is entitled to a preliminary order and permanent order/judgment, restraining and enjoining Aragon from actions constituting further breaches of the Confidentiality and Non-Solicitation Agreement.

## **REQUEST FOR RELIEF**

The Company respectfully requests that the Court grant the following relief:

A. Enter judgment for the Company against Aragon on all counts asserted herein;

B. Award the Company money damages sufficient to compensate it for all losses;

C. Enjoin Aragon from working for Ad.net or any competitor listed in the Noncompete Agreement for a three (3) year period from the date of the last breach of the Noncompete Agreement;

D. Enjoin Aragon, and all other persons in active concert or participation with him, from soliciting any current or former Company customers for a three (3) year period from the date of the last breach of the Confidentiality and Non-Solicitation Agreement;

E. Enjoin Aragon, and all other persons in active concert or participation with him, from soliciting and/or recruiting any Company employees to terminate their employment with the Company for a three (3) year period from the date of the last breach of the Confidentiality and Non-Solicitation Agreement;

F. Enjoin Aragon, and all other persons in active concert or participation with him, indefinitely from possession, using and/or disclosing the Company's Confidential Information, Customer Information, proprietary business information and trade secrets;

G. Order Aragon to return all Company equipment without performing any modifications and/or deletions to the equipment or the data contained therein;

H. Order Aragon to immediately return to the Company all Confidential Information, Customer Information, proprietary business information and trade secrets, including all physical and digital copies of the same and all equipment containing said information and delete any copies of said in formation in his possession or the possession of any third parties by virtue of his provision;

I. Award the Company exemplary damages;

J. Order Aragon to account for all gains, profits, and advantage derived from his misappropriation of the Company's Trade Secrets, Confidential Information, and Customer Information;

K. Order Aragon to disgorge all profits earned from his misconduct;

L. Award the Company its reasonable attorneys' fees, costs, and pre and post judgment interest; and

M. Maintain jurisdiction over this matter for the purpose of enforcing and overseeing Aragon's compliance with any injunctive relief issued; and

N. Order such other and further relief the Court deems just and proper.

Dated:  July 12, 2024

/s/ Nicholas J. Bernate
_____
Nicholas J. Bernate, Bar No. 10238
*nbernate@mpmlaw.com*
Maria C. Fox, Bar No. 9957
*mfox@mpmlaw.com*
Counsel for Plaintiffs

MURRAY, PLUMB & MURRAY
75 Pearl Street, P.O. Box 9785
Portland, ME  04104-5085
(207) 773-5651