IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| **WEB DESIGN AND CONSULTING SERVICES, INC, et al.,** | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No: 2:24-cv-00249-KFW<br>) |
| **MICHAEL ARGON,** | )<br>) |
| Defendant. | )<br>)<br>)<br>)<br>) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR STAY**

Plaintiffs Web Design and Consulting Services, Inc. ("WDSC") and Ad.com Interactive Media, Inc. ("AdMedia") (collectively, "Plaintiffs") hereby oppose Defendant's Motion to Dismiss or Stay ("Defendant's Motion").

**LEGAL STANDARD**

In evaluating a motion to dismiss, a Court will accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor. *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013). A motion to dismiss pursuant to Rule 12(b)(6) tests the adequacy of the claims in a complaint. Fed. R. Civ. P. 12(b)(6); *Beegan v. AP*, 43 F. Supp. 2d 70, 73 (D. Me. 1999). The motion to dismiss is not an occasion to prove or disprove the facts in the Complaint. *Id.* Rather, the Court assumes that all facts alleged in the Complaint are true and makes all reasonable inferences from those facts in plaintiff's favor. *Greenier v. Pace, Local No. 1188*, 201 F. Supp. 2d 172 (D. Me. 2002) (citing *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996)).

**ARGUMENT**

I. **Plaintiffs' Complaint Must Not be Dismissed for *Forum Non Conveniens* Because Defendant Fails to Establish that California is a More Convenient Forum to Litigate Plaintiffs' Claims.**

*Forum non conveniens* is a doctrine that permits a District Court to dismiss a claim regardless of whether it has jurisdiction over it, "when considerations of convenience, fairness, and judicial economy so warrant." *Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007). To justify dismissal on *forum non conveniens* grounds, the party moving for dismissal must meet "the heavy burden of establishing that an adequate alternative forum exists and that 'considerations of convenience and judicial efficiency strongly favor litigating the claim in the second forum.'" *Adelson v. Hananel*, 510 F.3d 43, 52 (1st Cir. 2007) (quoting *Iragorri v. Int'l Elevator, Inc.*, 203 F.3d 8, 12 (1st Cir. 2000)). Convenience and efficiency are to be measured against a "compendium of factors relevant to the private and public interests implicated by the case." *Iragorri*, 203 F.3d at 12. The defendant's burden is to demonstrate "both that an adequate alternative forum exists and that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum." *Iragorri*, 203 F.3d at 12; *see also Huhtamaki Co. Mfg. v. CKF, Inc.*, 648 F. Supp. 2d 167, 170 (D. Me. 2009).

*Forum non conveniens* is a flexible, practical doctrine designed to avoid trials in places so "inconvenient" that transfer is needed to avoid serious unfairness, and plaintiff's choice of forum is to be disturbed only "rarely." *Forum Fin. Grp. v. President & Fellows of Harvard Coll.*, 173 F. Supp. 2d 72, 94 (D. Me. 2001) (citing *Howe v. Goldcorp Investments, Ltd.*, 946 F.2d 944, 945 (1st Cir. 1991); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 259, 102 S. Ct. 252, 267, 70 L. Ed. 2d 419 (1981); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S. Ct. 839, 842, 91 L. Ed. 1055 (1947)). There is a strong presumption in favor of the plaintiff's forum choice, and the defendant

bears the heavy burden of proving both (1) the availability of an adequate alternative forum, and (2) the likelihood of serious unfairness to the parties in the absence of a transfer to the alternative forum. *Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1349 (1st Cir. 1992) (citing *Tramp Oil & Marine, Ltd. v. M/V Mermaid I*, 743 F.2d 48, 50 (1st Cir. 1984); *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524, 67 S. Ct. 828, 91 L. Ed. 1067 (1947)) (other citations omitted).

There is no dispute in this case that California is an adequate alternative forum. Conceding that California is an adequate alternative forum, "the Court then must balance a series of private and public interests in determining whether to retain the case or dismiss it in favor of [the] alternative forum." *Manela v. Garantia Banking Ltd.*, 940 F. Supp. 584, 590 (S.D.N.Y.1996) (quoting citations omitted).

A. Private Interest Factors

Private interest factors for the Court's consideration include the "relative ease of access to sources of proof, availability of compulsory process, comparative trial costs, ability to enforce a judgment, and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Nowak*, 94 F.3d at 719 (quoting *Gilbert*, 330 U.S. at 508). Defendant fails to establish any convincing private interest factors in dismissing this action in favor of the alternative forum of California.

Plaintiffs' claims against Defendant for breach of contract and misappropriation of trade secrets are primarily based on information that exists in Plaintiffs' computer network and in Defendant's laptop computer. The Plaintiffs' network and Defendant's laptop are not geographically limited. The information is accessible from -- or transportable to -- any location. Even if it is necessary for an expert witness to forensically analyze the Plaintiffs' network or the specific laptop, the network and laptop can be accessed remotely and the laptop is also easily

3

transportable. If the parties hire experts located in other states, modern technologies and platforms like Zoom and TEAMS are available for witnesses to provide cost efficient remote testimony. Geographical distances do not satisfy Defendant's heavy burden of establishing "serious unfairness" in the absence of a case transfer to California.

Regarding the potential testimony of Plaintiffs' customers or other witnesses, there is no record evidence where these customers or witnesses are located. Defendant repeatedly states that these witnesses are "likely" located in California, but there is no record evidence supporting this proposition. Similarly, Defendant, without record evidence, asserts that witnesses supporting or refuting Plaintiffs' claims are "amenable to compulsory process in California to secure their attendance at depositions or trial" and "may not be amendable to compulsory process in Maine." These are unfounded assertions particularly given nationwide service of subpoenas under Fed. R. Civ. P. 45 (b)(2) and the availability of modern technologies and platforms which allow witnesses to attend depositions and trials remotely or via video recorded depositions. Defendant's hypothetical and unfounded allegations simply are not sufficient to overcome his heavy burden and the strong presumption in favor of Plaintiff's choice of forum.[1]

**B. Public Interest Factors**

Public interest factors for the Court's consideration include "the practical difficulties of unnecessarily imposing upon a busy court the obligation to hear a case more fairly adjudicated elsewhere, the imposition on jurors called to hear a case that has no relation to their community, and the familiarity of the court with applicable laws." *Nowak*, 94 F.3d at 719-20; *see also Forum*

---

[1] Defendant makes a similar argument regarding prior employees of Plaintiffs (Lechner and Schuster) who are located in in Florida and New York. Defendant argues that both Lechner and Schuster have already voluntarily submitted to the personal jurisdiction of the court in the California and may not be amenable to compulsory process in Maine. Again, Fed. R. Civ. P. 45 (b)(2) provides for nationwide service of subpoenas and modern technologies and platforms allow for witnesses to testify remotely from any location.

4

*Fin. Grp.* 173 F. Supp. 2d at 95. Defendant has failed to establish any convincing public interest factors for dismissing this action in favor of the alternative forum of California.

While it is true that this Court determined that California law applies to Plaintiffs' breach of contract claims, the Court did not rule that California law applies to *all* of Plaintiffs' claims, such as to Plaintiffs' statutory and common law claims for Defendant's misappropriation of Plaintiff's trade secrets which occurred while Defendant was physically present and located in Maine.[2] While California may have an interest in this case, it does not have the *exclusive* interest.[3] It is simply not appropriate to state that this matter is a "California dispute." Defendant's wrongful acts occurring in Maine are governed by Maine law and Maine has a strong interest in enforcing its laws to wrongful acts occurring inside its borders. Just because Defendant moved to California does not moot Maine's interest.

I. **Plaintiffs' Complaint Must Not be Dismissed nor Stayed Under the *Colorado River* Abstention Doctrine Because Defendants Have Not Overcome the Strong Presumption in Favor of the United States District Court Retaining Jurisdiction.**

It is well established that "the presence of parallel litigation in state court will not in and of itself merit abstention in federal court." *Jiminez v. RodRiguez-Pagan*, 597 F.3d 18, 27 (1st Cir. 2010). The "mere potential for conflict in the results of adjudications, does not, without more, warrant staying the exercise of federal jurisdiction." *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 816 (1976). The *Colorado River* abstention doctrine "rests on consideration of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* at 817. In limited instances, the abstention doctrine "allows federal courts . . . to stay or dismiss proceedings that overlap with concurrent litigation".

---

[2] Defendant's own employment records and Plaintiffs' network access logs evidence that Defendant performed his duties and accessed Plaintiffs' confidential business data while residing in Maine.
[3] Maine's interests are underscored by its adoption of the Uniform Trade Secrets Act, which is intended to protect employers from misappropriation of confidential business data by current or former employees.

*Jiminez*, 597 F.3d at 21. Cases that merit the doctrine's application "are rare . . . because, of all the abstention doctrines, [the *Colorado River* abstention doctrine] is to be approached with the most caution, with only the clearest justifications warranting dismissal." *Id.* at 27 (citing *Colo. River*, 424 U.S. at 819).

*Colorado River* began a line of cases that offer a non-exhaustive list of factors that courts consider when deciding whether circumstances are exceptional and rare enough to warrant abstention. As articulated in *Jimenez,* the factors are:

> (1) whether either court has assumed jurisdiction over a res; (2) the geographical inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

*Jimenez*, 597 F.3d at 27-28 (quoting *Rio Grande Cmty. Health Ctr. v. Rullan*, 397 F.3d 56, 71-72 (1st Cir. 2005)). Dismissal under the *Colorado River* abstention doctrine rests on " . . . a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Jimenez*, 597 F.3d at 28.

Under *Jiminez*, the Defendant has not satisfied that the circumstances of this case are exceptional and rare enough to overcome the strong presumption in favor of this Court retaining its federal jurisdiction.

### A. Geographical Inconvenience

Judicial consideration of the "inconvenience factor" has traditionally regarded the "physical proximity" of the federal forum to the relevant evidence and witnesses. *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 15 (1st Cir. 1990) (citing *Colo. River*, 424 U.S. at 820). However, the case law which developed the "physical proximity" test arose in a very different context than the context courts and litigants operate within today. Since the COVID-19 pandemic

in 2020, courts and litigants have availed themselves of new technologies and platforms, the use of which have continued to the present and operate as tools for judicial and litigation efficiency. As a result of platforms like Zoom and TEAMS, and video recorded depositions and express mail, the physical distance that once presented challenges for courts and litigants have been removed. Modern technologies, video recorded depositions, express mail and efficient transportation are tools that allow for accessibility and reduced costs irrespective of distance.

It is plain that Maine and California are on opposite coasts. If there were no technologies or modern transportation, physical proximity could be a challenge. However, these challenges are no longer exceptional. Evidence is easily electronically transferred from place to place worldwide. Witnesses and physical objects are also easily accessible and transportable worldwide using modern technologies and modern transportation.

The physical proximity test has been rendered less expectational given technologies and transportation. Dismissal under the *Colorado River* doctrine is only permissible with the "clearest justifications." *Jiminez*, 597 F.3d at 28. The doctrine tolerates certain distal inconveniences before dismissal.

**B.  Piecemeal Litigation**

The phrase "piecemeal litigation" refers to something more than the "routine inefficiency that is the inevitable result of parallel proceedings." *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 16 (1st Cir. 1990). Such inefficiency "was not significant to the United States Supreme Court's decision in *Colorado River* and has not contributed to any of [the 1st Circuit's] case law." *Jiminez*, 597 F.3d at 29. If courts were to consider these inefficiencies of concurrent federal-state jurisdiction over the same action, ". . . courts could abstain in any diversity action that overlapped with a state-court action." *Id.* To duplicate efforts, ". . . while wasteful, is not exceptional" enough

7

to warrant dismissal. *Id*. (quoting *Gentron Corp. v. H.C. Johnson Agencies, Inc.*, 79 F.R.D. 415, 418 (E.D. Wis. 1978). The potential for "fragmented adjudication, to be distinguished from merely duplicative adjudication, warrants consideration in the *Colorado River* analysis. *Id*. at 30. Ultimately, the inquiry "should focus on the implications and practical effects of litigating suits deriving from the same transaction in two separate fora." *KPS & Assocs., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 10-11 (1st Cir. 2003).

Any "effect of litigating" the Maine and California claims simultaneously is due to Defendant's purposeful forum shopping activities and is wholly not attributable to Plaintiff who filed this action first. With full knowledge of the content of Plaintiff's Complaint, Defendant thereafter created and filed a "copycat" action in California. Defendant's second filed action in California required the Plaintiff to assert any compulsory counterclaims. Cal. Civ.Proc. Code § 426.30 (2024). While the cases overlap and cause inefficiency, this inefficiency was purposefully and strategically created by Defendant and Defendant cannot now be heard to complain about it. Forum shopping is a disfavored practice that is to be discouraged, not encouraged.

### C. Relative Progress

The "relative progress" test is qualified, and the assessment is made "in a pragmatic, flexible manner with a view to the realities of the case at hand." *Id.* at 31 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 21, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

Although the relative progress of the case is important, the relative progress does not render irrelevant that this action was filed first. Defendant remarks that discovery is further along in California. However, Defendant omits that discovery is further in California *only* because Defendant has purposefully chosen to file Motions and not to serve discovery in Maine.

8

Defendant's purposeful delay tactics in Maine is purely self-driven and therefore not a factor the Court should credit.

### D. Controlling Law

Whether state or federal law controls supports abstention "only when a case presents complex questions of state law that would best be resolved by a state court." *Mabee v.* Eckrote, 2020 WL 6081887, at *5 (D. Me. Oct. 15, 2020). In its Order on Plaintiff's Motion for Preliminary Injunction, the Court ruled that California law applies to the contract claim. ECF No. 43, Order at 6-13.

Although the Court ruled that California law applies to the contract claim, that ruling does not negate Maine's interest in applying Maine's law to Defendant's conduct which occurred inside Maine. Defendant performed his work for Plaintiffs while physically present in Maine. Aragon Aff. ¶¶ 15-17, 21. Of his six years of employment, half were spent working in Maine. Defendant's wrongful acts alleged in the Complaint occurred while Defendant was physically present and working in Maine. Maine has a strong and compelling interest in applying Maine's laws to wrongful conduct occurring in Maine.

Additionally, the *Mabee* case counsels that this factor is only pertinent to abstention when a case deals with "complex" questions of state law that would "best be resolved in a state court." This is not a case involving complex laws. The conduct at issue in this case arises from an all-too-common occurrence: a departing employee's misappropriation of an employer's trade secrets. The laws which govern such misconduct are, for the most part, uniform and uncomplicated.

### E. Adequacy of the State Forum

The sixth factor of the *Colorado River* abstention test "operates against the surrender of jurisdiction only where the state forum may not be adequate to adjudicate the claims." *Rojas-*

*Hernandez v. Puerto Rico Elec. Power Auth.*, 925 F.2d 492, 496 (1st. Cir. 1991). A Plaintiff's interests being adequately represented in state court "does not speak in favor of abstention but merely poses no impediment to it." *Klane ex. Rel. Klane v. Mayhew*, 2013 WL 1245677, at *5 (D. Me. Mar. 26, 2013).

Even if, as the Defendant argues, the Plaintiff's interests can be adequately represented in state court, this factor is neutral in weight among all the *Colorado River* factors. There is no indication that the state forum is either inadequate or superior compared to this federal forum. Instead of favoring abstention, this factor weighs against Defendants' choice of forum because this federal forum is, at minimum, an equal forum.[4]

### F. Analysis of Factors

Under the *Colorado River* abstention doctrine, "rare and exceptional" circumstances must present themselves for a case to overcome the strong presumption in favor of federal courts retaining federal jurisdiction. Without this strong presumption favoring federal courts retaining jurisdiction, this Court might find reason to grant the Defendant's Motion. However, the *strong* presumption does shape the analysis of each of the *Colorado River* factors, making it improper to find in favor of abstention. The Defendant has not overcome this *strong* presumption and has failed to submit a record that allows for a finding that this case's circumstances are "rare and exceptional" and warrants a dismissal or stay under the *Colorado River* abstention doctrine.

### CONCLUSION

This action was the **first filed action**, for which there is a strong presumption in support and a heavy burden a defendant must over-come to dismiss or stay the action. The Defendant's

---

[4] There are three remaining *Colorado River* factors, as enumerated in *Jimenez*: (1) whether either court has assumed jurisdiction over a res; (2) the vexatious or contrived nature of the federal claim; and (3) respect for the principles underlying removal jurisdiction. *Jimenez* at 28 (quoting *Rio Grande Cmty. Health Ctr.*, 397 F.3d 56 71-72). There is agreement between the parties that these factors are not implicated in the present matter.

own employment records and Plaintiffs' network access logs evidence that Defendant performed his duties and accessed Plaintiffs' confidential business data while living in Maine. Maine has a strong interest in enforcement of its laws, as underscored by Maine's adoption of the Uniform Trade Secrets Act which is intended to protect employers from misappropriation of confidential business data by current and former employees. Dismissal or a stay of this action will materially prejudice the Plaintiffs' abilities to protect their confidential business data and mitigate the ongoing harm from Defendant's conduct.

  WHEREFORE, Plaintiffs respectfully request that this Honorable Court deny Defendant's Motion to Dismiss or Stay, together with all other relief as is just.

Dated in Portland, Maine on the 10th day of June 2025.

                Respectfully Submitted,
                Plaintiffs,
                By counsel,

                */s/ Jeffrey Bennett*

                _____
                Jeffrey Bennet, Esq. #7223
                Brooke J. Bailey, Esq. #6760
                Legal-Ease, LLC, P.A.
                Two City Center, 4th Floor
                Portland, ME 04101
                207-805-0055
                service@legal-ease.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of June, 2025 I served true copies of the above Opposition to Defendant's Motion to Dismiss or Stay via ECF filing system to:

Emily Crowley, Esq.
Jason Theobald, Esq.

*/s/ Jeffrey Bennett*
_____
Jeffrey Bennett, Bar No. 7223