UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| WEB DESIGN AND CONSULTING SERVICES, INC., and AD.COM INTERACTIVE MEDIA, INC., | ) ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) ) | No. 2:24-cv-00249-KFW |
| MICHAEL ARAGON | ) ) | |
| Defendant | ) | |

## ORDER STAYING THE CASE[1]

In this case, Web Design and Consulting Services, Inc., and Ad.com Interactive Media bring claims against their former employee Michael Aragon for breach of contract, breach of fiduciary duty, and violations of federal and state trade secret laws. First Amended Complaint (FAC) (ECF No. 7). In December 2024, I denied Web Design and Ad.com's motion for a preliminary injunction and, in doing so, concluded that California rather than Maine law controlled their contract claims. Aragon now moves to, among other things, dismiss or stay the case under the *Colorado River* abstention doctrine in deference to parallel litigation between the parties in California state court. Motion (ECF No. 44). For the following reasons, I grant Aragon's motion.

---

[1] The parties have consented to my presiding over all proceedings in this matter, including the entry of judgment. ECF No. 23.

## I. Background

Web Design and Consulting Services, Inc., and Ad.com Interactive Media, Inc., (collectively, the "Company") form a digital marketing and consulting company that provides services to commercial and private clients, with its principal place of business in Woodland Hills, California. FAC ¶¶ 6-7, 15. The Company employed Aragon as its Vice President of Sales from August 2018 until March 2024, when he resigned. *Id.* ¶¶ 1, 18.

Aragon lived in California when he began his role as Vice President of Sales for the Company, and he entered into all agreements related to his employment in California. Aragon Affidavit (ECF No. 16-1) ¶¶ 8-9. In 2019, Aragon began working remotely while still living in California, before eventually relocating to Maine in late 2021. *Id.* ¶¶ 14-17. After Aragon resigned in March 2024, he began working for a competitor, Ad.net, Inc., which has its principal place of business in Los Angeles, California. *Id.* ¶¶ 18-19, 41.

Following Aragon's change in employment, the Company initiated this lawsuit against him. The Company claims that Aragon breached a Confidentiality and Non-Solicitation Agreement (CNSA), violated the Maine Uniform Trade Secrets Act and the federal Defend Trade Secrets Act, and breached his fiduciary duty or duty of loyalty to the Company. FAC ¶ 5. Specifically, the Company alleges that Aragon retained confidential and proprietary information which he used to solicit the Company's customers and two of its former employees to leave for Ad.net, Inc. *Id.* ¶¶ 1-5.

As Vice President of Sales at the Company, Aragon had access to the confidential information, including the "customer relationship management (CRM) database." First Declaration of Daniel Bibi (ECF No. 11) ¶ 19. The Company claims that towards the end of his employment, Aragon accessed the Company's CRM database to view sensitive information. Second Declaration of Daniel Bibi (ECF No. 25-1) ¶ 12. This information included the names and contact details of current and prospective customers, sources of customer leads, details of purchases or inquiries, sales data, contracts, accounting information, pricing information, and data related to customers that were not relevant to Aragon's responsibilities as Vice President. *Id.*; *see also* Aragon Affidavit ¶¶ 20-24.

Shortly after Aragon resigned from the Company and became Vice President of Sales and Strategic Alliances at Ad.net, seventeen of the Company's customers relocated their business elsewhere, and one of the seventeen companies transferred its business to Ad.net. *See* ECF No. 11 ¶¶ 34-35, 37-38; ECF No. 25-1 ¶ 1. Additionally, following Aragon's resignation, two of the Company's employees left to join Ad.net. *See* ECF No. 11 ¶¶ 41-44.

On July 12, 2024, the Company initiated this lawsuit in the District of Maine. Shortly thereafter, Aragon, Ad.net, and the two employees who left the Company for Ad.net filed a complaint in the Los Angeles County Superior Court in California. Declaration of Todd Croutch (ECF No. 45) ¶ 7; ECF No. 44-1. The California action addresses the same factual allegations as this case, with additional claims alleging that Aragon was unlawfully subject to the CNSA in violation of several provisions of

3

the California Business and Professions Code, amounting to intentional interference with contractual relations. ECF 44-1 ¶¶ 1-14. The Los Angeles County Superior Court has subject matter jurisdiction and personal jurisdiction over all the relevant parties. *See* Cal. Const. art. VI, § 10; ECF No. 44-1. The Company filed a cross-complaint in California alleging breach of contract, breach of a fiduciary duty, misappropriation of trade secrets, intentional and negligent interference with contractual relations, intentional and negligent interference with prospective economic advantage, and conversion. ECF No. 44-2 ¶ 11-34.

Later in 2024, the Company filed a motion to dismiss the California case based on *forum non conveniens*, which the Los Angeles County Superior Court denied in January 2025. ECF No. 44-3. The Court reasoned that the California suit was the only case where all the relevant actors are parties to the action, and it would prejudice them to "hold [the California] case in abeyance pending the outcomes of the other matters."[2] *Id.*

## II. Discussion

In its response to Aragon's motion, the Company applied the Rule 12(b)(6) standard, which limits consideration to the facts alleged in the complaint. *See* Response (ECF No. 50) at 1. However, contrary to the Company's argument, this Court can consider factors outside of the complaint when ruling on a motion to

---

[2] The Company filed related lawsuits against the two employees who left to join Ad.net. One suit was filed in Florida state court against Sandy Lechner, and the other was filed in New York state court against Paul Schuster. ECF No. 45 ¶¶ 13-17. The Florida suit was dismissed because the parties failed to appear, and the New York suit was discontinued pursuant to a stipulated tolling agreement under N.Y. C.P.L.R. § 3217 (McKinney 2025) pending the disposition of the California action. ECF Nos. 44-5 & 44-6; ECF No. 45 ¶¶ 14, 17.

dismiss based on the *Colorado River* abstention doctrine.³ For instance, in *Jiménez v. Rodríguez-Pagán*, 597 F.3d 18, 27-28 (1st Cir. 2010), the Court discussed the various factors that must be considered before a court decides to stay or dismiss a federal action due to parallel state-court litigation. Those factors include considerations, like respect for the principles underlying removal jurisdiction, that a plaintiff would not include in a standard complaint. *Id.*

The existence of the California action alone does not warrant abstention by this Court. *See McClellan v. Carland*, 217 U.S. 268, 282 (1910). Federal courts are bound by a "virtually unflagging obligation . . . to exercise the jurisdiction given to them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Although this obligation is strong, there are limits; exceptional circumstances may warrant federal abstention when considerations of "wise judicial administration" advise against duplicative litigation. *Jiménez*, 597 F.3d at 27 (quoting *Colorado River*, 424 U.S. at 818).

A district court's decision on "whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp.*

---

³ Aragon also seeks dismissal of this action under the doctrine of *forum non conveniens*. Although California state court is an adequate alternative forum, Aragon was required to show that litigating the dispute in that forum is necessary to avoid a serious unfairness. *See Howe v. Goldcorp Investments, Ltd.*, 946 F.2d 944, 950 (1st Cir. 1991) ("*[F]orum non conveniens* is a flexible, practical doctrine designed to avoid trials in places so inconvenient that transfer is needed to avoid serious unfairness." (cleaned up)). He did not make such a showing. Motion at 9-11. He merely mentioned the serious unfairness requirement without discussing how it was demonstrated in this case. *Cf. Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1356 (1st Cir. 1992) (discussing how the unavailability of a key witness may demonstrate serious unfairness).

*v. Mercury Const. Corp.*, 460 U.S. 1, 16 (1983). To assist in this assessment, the Supreme Court developed a non-exhaustive list of factors for district courts to consider. *See id.* at 17 n.20; *Colorado River*, 424 U.S. at 817. The First Circuit has stated the list as follows:

> (1) whether either court has assumed jurisdiction over a *res*; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

*KPS & Assocs. v. Designs by FMC, Inc.*, 318 F.3d 1, 10 (1st Cir. 2003). No single factor is determinative; instead, courts must carefully consider "the obligation to exercise jurisdiction and the combination of factors counselling against that exercise." *Colorado River*, 424 U.S. at 818.

The balance of the first two factors is neutral. There is no "res" for a court to exercise jurisdiction over. *See Res*, Black's Law Dictionary (12th ed. 2024) ("An object, interest, or status, as opposed to a person <jurisdiction of the res—the real property in Colorado>."). And geographical inconvenience does not weigh heavily in favor of either forum, as the Company chose to avail itself of the Defendant's home forum, and the evidence will primarily be digital, making it accessible from multiple locations.

The third factor of avoiding piecemeal litigation, however, weighs heavily in favor of abstention. This factor recognizes more than just the typical inefficiencies presented by duplicative proceedings. *See Jiménez*, 597 F.3d at 29 ("Put differently,

6

[a] duplication of effort, while wasteful, is not exceptional." (cleaned up)). Instead, it relates to the "implications and practical effects of litigating suits deriving from the same transaction in two separate fora, and weigh in favor of dismissal only if there is some exceptional basis for dismissing one action in favor of the other." *KPS & Assocs., Inc.*, 318 F.3d at 10-11 (cleaned up).

In *Jiménez*, the First Circuit examined one such exceptional basis. 597 F.3d at 29-32. The Court determined that piecemeal litigation should be avoided when the federal forum could only determine the obligations of some parties, and a parallel proceeding was necessary to determine the rights and obligations regarding the remaining litigants. *Id.* Other Circuits have reached similar conclusions. *See, e.g.*, *Sto Corp. v. Lancaster Homes, Inc.*, 11 F. App'x 182, 188 (4th Cir. 2001) ("As the federal case stands now, the absence of a party may result in piecemeal litigation. This possibility lends some support for federal court abstention."); *Cont'l Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1373 (9th Cir. 1991), ("[T]here is the general policy of avoiding piecemeal litigation."), *overruled on other grounds by Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998); *cf. Federated Rural Elec. Ins. Corp. v. Ark. Elec. Coops., Inc.*, 48 F.3d 294, 298 (8th Cir. 1995) (declining abstention when "[t]he federal action can resolve issues relating to all the CGL policies, whereas the Saline County action can only resolve issues relating to one policy").

The California action is the only case with all the relevant parties joined in the litigation and subject to the Court's jurisdiction. The cases brought against Lechner and Schuster, *see supra* n.1, have either been voluntarily discontinued or dismissed

7

in favor of the California action. The Company sought dismissal of the California action. ECF No. 44-3. However, the Los Angeles County Superior Court determined that it would prejudice the parties to hold the matter in abeyance in favor of other piecemeal litigation. *Id.* In addition to the prejudice considerations, it makes little sense to continue a matter primarily governed by state law, which will only determine the rights and obligations of a subset of the relevant actors, when another jurisdiction—with all the relevant parties joined in the litigation—is further along in the process.

That brings me to the fourth factor, the order in which the courts assumed jurisdiction, which also favors abstention. This factor has evolved, and it is now understood that "the relative progress of the suits is more important than the strict order in which the courts obtained jurisdiction." *Gonzalez v. Cruz*, 926 F.2d 1, 4 (1st Cir. 1991). Accordingly, courts measure "which action—the suit in the federal court or that in the state court—is the more advanced in a pragmatic, flexible manner, with a view to the realities of the case at hand." *Elmendorf Grafica, Inc. v. D.S. Am. (East), Inc.,* 48 F.3d 46, 52 (1st Cir. 1995) (cleaned up).

The specifics of this case show that even if this federal action were to proceed, it would only resolve the rights and obligations of the diverse parties subject to its jurisdiction. Conversely, the California action will not only be determinative for all the stakeholders, but it has also progressed further into the discovery process. *See Jiménez*, 597 F.3d at 31 ("The Commonwealth's head start into the merits lessens the federal court's need to exercise jurisdiction."); ECF Nos. 31-40, 45 ¶ 11.

8

The fifth factor, whether state or federal law controls, is neutral regarding abstention. This Court has already determined that California law applies to the Company's breach of contract claims. ECF No. 43. The remaining claims—violation of the Maine Uniform Trade Secrets Act, violation of the Defend Trade Secrets Act, and Breach of a Fiduciary duty or a Duty of Loyalty—are primarily questions of state law and, as addressed below, require similar elements in either jurisdiction. This controlling law factor only weighs in favor of abstention if the "parties' claims present particularly novel, unusual or difficult questions of legal interpretation." *Elmendorf Grafica, Inc.,* 48 F.3d at 52. This case does not present new questions of state law, nor is it primarily driven by a federal issue, as the dispute mainly arises from a contract governed by established California precedent. *See* ECF No 43.

The sixth factor, the adequacy of the state forum to protect the parties' interests, is only relevant when it disfavors abstention. *See United States v. Fairway Capital Corp.,* 483 F.3d 34, 43 (1st Cir. 2007) ("[W]e understand this factor to be important only when it disfavors abstention."). That is not the case here. The Company's state and federal claims are available in either forum. *See* 10 M.R.S.A. § 1542(1)-(4) (Westlaw Oct. 14, 2025) (adopting the Uniform Trade Secrets Act); Cal. Civ. Code § 3426.1(a)-(d) (2025) (adopting the same in California); 18 U.S.C. § 1836 (containing no exclusive jurisdiction clause and allowing a federal trade secret claim to be brought in state court); *see also Beijing Neu Cloud Oriental Sys. Tech. Co., Ltd. v. Int'l Bus. Machines Corp.,* 110 F.4th 106, 118 (2d Cir. 2024) ("[S]tate courts have concurrent jurisdiction to adjudicate claims arising under the DTSA.").

Moreover, the Maine and California Uniform Trade Secrets Acts are nearly identical in terms of their elements. *Compare* 10 M.R.S.A. § 1542(1)-(4), *with* Cal. Civ. Code § 3426.1(a)-(d). Likewise, the relevant portions of the only federal question in the case—the Defend Trade Secrets Act—require similar proof as the Maine and California trade secrets claims. *See* 18 U.S.C. § 1839(3)-(6). At their core, all three acts require proof of misappropriation and define a trade secret in very similar ways. *See* 10 M.R.S.A. § 1542(4)(A)-(B); Cal. Civ. Code § 3426.1(a)-(d); 18 U.S.C. § 1839(3)(A)-(B).

Finally, the elements of breach of fiduciary duty are the same in Maine and California. *Compare Meridian Med. Sys., LLC v. Epix Therapeutics, Inc.*, 2021 ME 24, ¶ 12, 250 A.3d 122 ("(1) a fiduciary relationship between the plaintiff and another person, (2) a breach of the other person's fiduciary duty toward the plaintiff, and (3) damages incurred by the plaintiff proximately caused by the breach."), *with Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (2011) ("The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, breach of fiduciary duty, and damages."). Accordingly, the sixth factor does not weigh against abstention. *See Fairway Capital Corp.*, 483 F.3d at 43.

The seventh factor—the vexatious or contrived nature of the federal claim—weighs slightly in favor of abstention. Although the Company's lawsuit is not vexatious in the traditional sense, it did choose to file in a geographically inconvenient forum with favorable law regarding its CNSA with Aragon. Maine will

10

enforce an employer's contractual restrictions on a former employee's trade, provided the agreement is reasonable under the circumstances and its scope is no wider than necessary to protect the employer's business interests. *See Roy v. Bolduc*, 34 A.2d 479, 480 (Me. 1943) (allowing a noncompete agreement to "be enforced in equity if it is reasonable under the circumstances."); 26 M.R.S.A. § 599-A(2) (Westlaw Oct. 10, 2025). California, however, has a "settled public policy in favor of open competition, and rejected the common law rule of reasonableness" approach to restraints on trade, and enacted section 16600 of the California Business and Professional Code. *Edwards v. Arthur Anderson LLP*, 44 Cal. 4th 937, 945 (2008) (cleaned up). Section 16600 dictates that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void," and that the "section shall be read broadly . . . to void the application of any noncompete agreement in an employment contract, or any noncompete clause in an employment contract, no matter how narrowly tailored," that does not meet one of the exceptions the chapter enumerates, none of which apply to this case. Cal. Bus. & Prof. Code, § 16600(a)-(b). Courts may address forum shopping under the seventh factor in the *Colorado River* abstention analysis. *See R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 981 (9th Cir. 2011) ("To avoid forum shopping, courts may consider 'the vexatious or reactive nature of either the federal or the state litigation.'" (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 17). Forum shopping is "[t]he practice of choosing the most favorable jurisdiction or court in which a claim might be heard," *Forum-Shopping*, Black's Law Dictionary (12th ed. 2024). Therefore, because the Company has a

11

tenuous connection with this forum and appears to have chosen it based on Maine's noncompete jurisprudence, the seventh factor weighs slightly in favor of abstention.

The final factor, respect for the principles underlying removal jurisdiction, does not apply in this case because the Company did not initiate both state and federal proceedings to avoid the restrictions underlying removal jurisdiction, which only allow the defendant to remove a case to federal court.  *See* 28 U.S.C. § 1441(a).

In sum, the desirability of avoiding piecemeal litigation, the relative progress of the two actions, the primacy of California law, the adequacy of the California court, and potential forum shopping all counsel in favor of abstention.  The implications of proceeding in federal court without the remaining parties require the application of another forum's law to a subset of the relevant actors.  The California Superior Court is positioned to provide comprehensive relief to all parties while applying familiar legal concepts that reflect "settled public policy in favor of open competition." *Edwards*, 44 Cal. 4th at 945.  Therefore, abstention is warranted.

The final determination is whether a stay or dismissal of this federal proceeding is appropriate during the pendency of the California action.  The Supreme Court has not indicated "whether a dismissal or a stay should ordinarily be the preferred course of action when a district court properly finds that *Colorado River* counsels in favor of deferring to a parallel state-court suit." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28.  Most circuit courts have held that a stay is the preferred disposition because it produces "the same practical result as a dismissal while still leaving the docket open in case loose ends remain at the conclusion of the state

proceedings." *Jiménez*, 597 F.3d at 31 (collecting cases). Although there will likely be no issues remaining at the conclusion of the California action, I see no reason to disrupt the First Circuit's history in favor of a stay. *See id.* I emphasize that by staying this action, I am not surrendering jurisdiction to the Los Angeles County Superior Court, and I retain jurisdiction to resolve remaining issues if necessary, following the conclusion of the California action.

## IV.  Conclusion

For the foregoing reasons, Aragon's motion to stay is **GRANTED** because *Colorado River* abstention is warranted.

Dated: October 24, 2025

/s/ Karen Frink Wolf
United States Magistrate Judge

13